Good morning, Your Honors, and may it please the Court, I am Mark Schechter and along with my colleague, Paul Woodard, represent Appellant Brian Lundstrom. Mr. Woodard and I will be dividing our allotted ten minutes, and with the Court's permission, I will attempt to retain two minutes of my time for rebuttal. We will be relying primarily on our written briefing due to our time limitation, and Mr. Woodard will be addressing primarily the Rooker-Feldman related issues. I'd like to highlight a few important issues on which we believe the District Court committed reversible error. First, denial of leave to amend. The Ninth Circuit law on this issue is clear, and I'm sure as Your Honors are well aware, leave to amend should be granted unless the Court determines that the allegation of other facts consistent with the challenge, including could not possibly cure the deficiency. Given the opportunity, an appellant could have easily amended the complaint to assert fraud by Ms. Young and her counsel with particularity in obtaining the domestic relations order based on a division of marital property and without notice to the appellant, raising the factual issue of what Ligon should have done in that instance under the Department of Labor Advisory Opinion 1999-13A. In 1999-13A, the Department of Labor stated that a plan administrator who has received a document purporting to be a domestic relations order must carry out the judiciary duties under ERISA. In a manner consistent with his general fiduciary duties, an amended complaint asserting fraud by Ms. Young and her counsel in obtaining a domestic relations order, giving Ms. Young 100% of Mr. Lundstrom's 401k and his stock options amounting to millions of dollars without notice to him, would certainly raise a question of fact as to what the Ligon fiduciary's conduct should have been upon receipt of the information. I have a question about one of your arguments. You argue that the District Court erred by conflating the second cause of action with the third cause of action. Can you explain what the differences are between those two causes of action? Yes, Your Honor. That relates to... Okay, so the third cause of action is for failure to provide procedural... Under ERISA, once the plan receives a domestic relations order, there's procedural steps it has to take, including issuance of guidelines for how it's going to be processed, the rules for processing it, the rights of the parties and so forth, relating to that process. The court, the District Court, basically talked about the third cause of action for breach of that provision, but then analyzed it under the second cause of action. Well, how is the second cause of action different, because they're both referencing the same provision of ERISA, right? The second cause of action and the third cause of action actually address two different sections of ERISA. The third cause of action specifically deals with the quadro procedures aspect, and that's 10-5-6-D-3. And the second cause of action discusses the fiduciary duty based on ignoring information concerning the validity of the quadro itself. When presented information that would contest the validity of the quadro itself, it is our position, and according to the Department of Labor, that a plan administrator has a further duty to investigate that, and not just simply continue on and proceed with the processing of that order when that information is being presented to it. Let me ask you this. You're down to 1 minute and 30 seconds out of Mr. Schechter's timing. That's in his rebuttal time. Do you want to skip over to your time now, Mr. Whitford, and go back to Mr. Schechter, or what are we doing? Sure, that's good. Let me ask you right off. You're the Rooker-Feldman guy, so let me just ask you. Don't claims 4 and 5 attack the Texas state court judgment directly, petitioning us to declare that both the 401k quadro and the stock draw are invalid? I don't dispute that. You don't see that? No, we don't dispute that. Oh, you don't? Okay. Well, doesn't that meet our two-part test of Kosagian versus TMSL? In other words, doesn't Rooker-Feldman apply in that case? Whether it applies in any other, we'll put that aside. But why wouldn't that apply in the claims 4 and 5? The reason it wouldn't apply is because of the extrinsic fraud exception to Rooker-Feldman. And the purpose of that and the rationale behind that is that prior to those orders being entered, we did not receive, our client did not receive the requisite due process required before those orders were entered. And as a result, we're not seeking to set aside the orders based on a decision made by the court as to validity of those orders. We're seeking to set it aside based on the lack of due process and the lack of the 5th and 14th Amendment that Mr. Munstrom did not receive. Do you believe that if we don't accept your contention that that is an extrinsic fraud, that 4 and 5 would be covered by Rooker-Feldman? I would have to concede that, yes. Thank you. Haven't you already made those arguments in the Texas courts and have lost? It's interesting that the Texas courts, we don't know what they really reviewed from the appellate level. And importantly, we did not get to argue these claims at the plenary level, you know, at the actual trial in which we would have an opportunity to cross-examine witnesses, to present witnesses, and to really get into these issues. We were stuck with appealing it, and at the appellate level, you know, we just did not have those same procedures in place to move forward with those claims. So you lost in the Texas courts. You think you lost wrongfully, but nonetheless, you lost. Why isn't that the end of it? Your Honor, if I may, the Texas court had no record at the trial court level to review on the appeal. There was no record. So even if that's the case, you're still asking us to review the Texas court and what they did? I mean, you're bottom line to all this? Well, Your Honor, we're suggesting that in the Texas court, the appellate, Mr. Lundstrom, had no notice of the proceeding in which to litigate the issues at the plenary stage. And so that was a deprivation of his due process rights, and certainly a violation of Texas law. And Texas courts have the ability to remedy that? I don't know, Your Honor. I don't practice in Texas. I don't know what their local procedures are. You don't think a Texas court can decide a due process issue or any of the state law claims that would be for them? Your Honor, I'm certain that the Texas courts could, under the 14th Amendment, decide the due process claims. I don't know if those were actually litigated on the appeal, and I don't know what there was in the record that Mr. Lundstrom actually did appeal from. Mr. Woodward, you've got about 18 seconds left. What do you have to tell us? You know, the other issues that I would like to present is that we don't believe that the first and second cause of action would be subject to repropelment because they're not de facto appeals. And these issues were addressed in our briefs, and I'm happy to answer further questions on that. Okay. Mr. Schechter, you're going to hold your rebuttal time until after we hear from the other side, right? Yes, Your Honor. Thank you. Very well. Okay, now we're going to go to a two-part appellee performance here. I guess Mr. Barnes goes first and Mr. Martinez second. Is that correct? That's correct. Good morning, and may it please the court. Brooke Barnes on behalf of the appellee, Ms. Carly Young. As the court noted, we have Paul Leopold from Ms. Young's Texas team and Coons Fuller. If the court has any substantive questions on Texas law. Ms. Young asked this court to affirm the district court's order for two reasons. First, the court lacks subject matter jurisdiction based upon the Rooker-Feldman abstention doctrine. And two, because appellant has not alleged a concrete and particularized injury aside from those arising from the quadro and DRO. In fact, Mr. Lundstrom does not have Article III standing. Your Honor, let me just ask you this. Aside from four and five where I may agree with you, as you know, Rooker-Feldman is a very narrow doctrine. Very, very rarely applied. And there are claims preclusion and issue preclusion and other things that the court could do that maybe get you to somewhat the same place. But I'm really struggling with how the balance of the claims fit under Rooker-Feldman. Why am I wrong? Well, Your Honor, I do not think that you're wrong. I think you actually hit the nail right on the head, which is the court does not have to look just for the claims for relief. It actually needs to look for the relief sought. And here, if we look at that, and that starts on supplemental excerpt of record page 67 under the first amended complaint. As it applies to Ms. Young, appellant asked for five types of relief. Number one, he wants to specifically state that the quadro is not in fact quadro. Number two, he wants to ask the district court to determine that the DRO is invalid. Number three, he wants to put a constructive trust and stop any exercise of the stock options under the DRO. Number four, he wants to stop any issuance of the DRO. And number five, he wants to stop post-marital assets. So, what this means is that all of the relief sought is inextricably intertwined with the orders from the Texas State Court. Is he framing it, though, as a violation of ERISA? In other words, the argument is that the, I guess, Lingo didn't do what it was required to do under ERISA. And the Supreme Court has said, even if it amounts to the same thing, if it's asking for, if it's bringing a different claim in federal court, then the development doesn't apply. I mean, I know you argue in the alternative that we should look at preclusion and collateral estoppel and the like, which seem like it would be applicable if the underlying issue is the same. But I'm struggling, as Jeff mentioned, to see if Iwerker-Beldman would be applicable when the complaint doesn't assert directly, certainly, that the plaintiff was injured by legal error of the state court or asking us to overturn the state court and is asking us for a ruling on ERISA principles. So, could you address that? Before you answer that, let me ask our courtroom deputy what's happening to our clock. It's stuck at 4 minutes and 34 seconds. And I don't know whether that's under Mr. Barnes's time or under Martinez's time or under somebody that's not here. No, it's Mr. Barnes's time. I don't know what happened. My timer is still running, and he has 1 minute and 47 seconds. Can you hear that, Mr. Barnes? You have 1 minute and 47 seconds. We apologize for the clock issue. Yes, Your Honor. So, please proceed. We'll have the clerk tell us when we're down to zero and the trap door opens up beneath your feet. Thank you, Your Honor.  There is the direct challenge when a plaintiff attacks a Texas state court or any state court order directly. But then there also is the de facto appeal, which is what we have here. And that is why it's important to look at the release sought. Because the release sought cannot be granted by the federal court without attacking or unwinding the quadro and the DRO, which even applies to the cause of action, the sixth cause of action under ERISA as to Ms. Young, because she is an alternate payee, and as argued in the alternative, she is not a proper ERISA defendant. So, with that, Your Honor, Ms. Young asked this court to affirm the district court's judgment, dismissing the case for lack of subject matter jurisdiction, and to briefly address the point that appellate raised. Extrinsic fraud does not apply in this matter for two reasons. Under Trugasi and T.S.M.L., the court there had a plaintiff that alleged an improper and fraudulent declaration that the court relied upon to create a judgment. And it was a separate action where they actually alleged extrinsic fraud. Here, there are no facts in the complaint. The district court explicitly stated that this was not a sham quadro. And when asked, it's in the record, when asked in oral argument whether or not they were, why Mr. Munstrom didn't receive notice, they said they did not know. Not that it was a fraud act by Ms. Young or her counsel. Accordingly, Ms. Young asked this court to affirm the order. Thank you. Very well. Mr. Martinez. Yes, thank you, Your Honors. Raul Martinez for the Ligon Pharmaceutical Defendants. Let me address the breach of fiduciary duty concept because, you know, under the case law in the Supreme Court case of Kennedy v. Plant Administrator for DuPont, which the district court cited, the administrator has a limited duty in terms of addressing DROs and quadros. Essentially, there's a checklist that has to be reviewed by the plant administrator. And that is the extent of the plant administrator's obligation. They don't have to look underneath. Is there a third cause of action? Is there a third cause of action? Because maybe you could address the three procedures, which Kennedy doesn't address, the three procedural requirements that are imposed on the trustee. Why isn't their claim that the trustee in this case violated those three procedures, why doesn't that state a cause of action? Well, let me say, first of all, that the Kennedy decision, and maybe it wasn't addressed in my brief because they didn't address it in their opening brief or reply briefs. But the key point I'm trying to make is that the Kennedy decision cited by the district court provides for a checklist approach. And they did not include that in their opening brief. So I don't have a response to that argument because it was essentially waived or abandoned on the part of the appellant. They argue that the procedure, the three procedures in G, they argue that that was the violation of the trustee, was that they didn't provide the requisite notice or communicate as required in that portion. I didn't see any response in the red brief, actually, to the argument that the district court had conflated the second and third causes of action. Well, I think the answer to that is that the response to those breach of fiduciary duty causes of action, for all of them, is that they are inextricably intertwined with the Texas court rulings. Well, the district court didn't find that, right? The district court said that for the third cause of action, it said that the Article III standing was based on Rupert Feldman. But they went on to address it on the merits, and it just talked about the issues that have been raised in their second cause of action. I think the court was basically saying, I think if you look at the whole opinion, and if this is de novo review, then you can affirm the court's ruling on the basis that because the Texas court ruling has to be reviewed by the district court to determine if there was a breach of fiduciary duty, because of the causation and damages, because if the quadros and DROs are entirely valid, and as determined by the Texas courts, they are valid, then there is no way that you can circumvent Rupert Feldman in the guise of a breach of fiduciary duty cause of action. Councilman, let's just assume, arguendum, that some, at least, of the claims are not covered by Rupert Feldman. Would we then remand this to the district court so that it could apply whatever claim or issue preclusion might apply here? I certainly take the point that you and Mr. Barnes, that the Texas court rulings are allegedly valid under Texas law. They comply with due process and the like. They clearly have to have an impact. My question is, if it's not under Rupert Feldman, what would we do? Well, if you don't go under Rupert Feldman, and if you have a de novo review concept, and the collateral estoppel issues were raised by both defendants, then this court can determine that collateral estoppel, because of the Texas determinations, is binding on the district court, and that bars the claim entirely. So you're saying that we can rely upon what the district court did. We don't need to send it back. We would simply take what the district court found, apply it on our own issue preclusion, claim preclusion, whatever it happened to be. Is that your position? That's our backup position. And bear in mind that one thing I want to mention, I know my time is running out, but there's a family code section in Texas that says that the Texas courts have continuing exclusive jurisdiction to modify or reverse a quadro or DRO. So however you want to call it, you are usurping the jurisdiction of the Texas court. So that is a legal question this court can determine, to say that no, this case doesn't belong in federal court. It belongs in state court. And Mr. Lundstrom has avoided jurisdiction in Texas. He doesn't want to go back to Texas because he's facing criminal charges there or contempt charges. Okay, let me ask my colleagues, do either of you have additional questions for Mr. Martinez or Mr. Barnes, for that matter? No. No, thank you. Okay, thank you, gentlemen. So we now go back to Mr. Schechter,  Okay, thank you, Your Honor. So as far as the concrete injury under Article 3, appellant was harmed by Ligon's failure to have written quadro procedures in place and the failure to communicate the procedures to him. For example, he had no idea as to what time limits were set by the plan administrator for making determinations. The appellant had the information that are able to evaluate his options in contesting the validity of the orders that were issued in Texas versus other venues. Further being provided that information on how to obtain a review of the administrator's determination as to whether an order is a domestic relations order would have been vital for Mr. Lundstrom. With such information, he would have been able to evaluate the proper court to apply to for relief or whether Ligon had internal administrative procedures available. Information is power. And Ligon's failure to provide appellant with his written quadro procedures, as claimed in our third cause of action, in those procedures that were mandated by ERISA, caused appellant a concrete harm because he lacked the requisite information needed to protect himself. As far as the, well, just as in the Fortman case, Mr. Lundstrom can still maintain action for a failure to abide by the 29 U.S. Code 1056 requirements, notwithstanding whether the quadro was found to have satisfied the specificity requirements under 1056 D3 C.A.B. I think you've gone over the time here. So let me ask my colleague whether either has additional questions for Mr. Lundstrom. I'm sorry, for Mr. Schechter or Mr. Woodward. Do not. Okay. We thank all counsel on this case. It has some interesting, somewhat complex issues. The case of Lundstrom versus Young et al. is submitted and we thank you. Thank you, Your Honor. Thank you, Your Honor. Thank you, Your Honor.
judges: M. Smith, Ikuta, Steele